STATE OF ALASKA
DEPARTMENT OF EDUCATION AND EARLY DEVELOPMENT
SPECIAL EDUCATION DUE PROCESS HEARING
BEFORE JONATHON A. KATCHER, HEARING OFFICER

IN THE SPECIAL EDUCATION          )
MATTER CONCERNING E.H.,           )
                                  )
vs.                               )
                                  )
FAIRBANKS NORTH STAR BOROUGH      )
SCHOOL DISTRICT.                  )
                                  )   DEED CASE NO. HR 05-09b

## DECISION AND ORDER

### INTRODUCTION

This is a special education due process hearing pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. 1400 et. seq., corresponding Alaska Statutes 14.30.180 et seq., and federal and state regulations.

The student is a five and one half year old boy (born 1/28/00) with autism.[1]

Evidence was presented at a hearing in Fairbanks on April 29 and May 2, 3 and 4, 2005. Pursuant to AAC 52.540(e)(9) the parents elected to have the hearing open to the public. The hearing was held in the Fairbanks North Star Borough School District (Fairbanks) board of education public meeting room. Numerous members of the public were present during the hearing at various

---

[1] "*Autism* means a developmental disability significantly affecting verbal and nonverbal communication and social interaction, generally evident before age 3, that adversely affects a child's educational performance. Other characteristics often associated with autism are engagement in repetitive activities and stereotyped movements, resistance to environmental change or change in daily routines, and unusual responses to sensory experiences." 34 C.F.R. 300.7(c)(1)(i).

DECISION AND ORDER
*E.H. v. FAIRBANKS*, DEED CASE NO. HR 05-09b                PAGE 1 OF 18

EXHIBIT C
Page 1 of 18

times.

The hearing was recorded by a court reporter and a transcript has been provided to the parties. The parties introduced exhibits which are now part of the record. The parties submitted opening and reply post hearing briefs.

## PROCEDURAL HISTORY

Federal and state regulations require that special education due process hearings shall be fully decided within 45 days of the parents' hearing request. 34 C.F.R. 300.511(a)(1); 4 AAC 52.550(f). Given that this case has lasted 280 days, an explanation is in order.

The parents made their due process hearing request on September 23, 2004. District Exhibit 12/Parents Exhibit 24. DEED determined that the 45 day time limit for the issuance of a decision would expire on November 6, 2004.

The parents initially demanded a due process hearing against both the Yukon/Koyukok School District (YKSD) and Fairbanks. The matter was originally assigned to another hearing officer whom one of the parties exercised their right to reject. On September 30, 2004 the matter was assigned to this hearing officer.

A telephonic pre-hearing conference was held on October 7, 2004. Potential conflicts of interest were identified and the matter was rescheduled for another pre-hearing conference on October 13, 2004. At the October 13th pre-hearing conference the parties agreed and the hearing officer ordered that the parents could join the State Department of Health and Social Services

DECISION AND ORDER
E.H. v. FAIRBANKS, DEED CASE NO. HR 05-09b                    PAGE 2 OF 18


EXHIBIT C
Page 2 of 18

Infant Learning Program (ILP) as a party to these proceedings. The due process hearing was scheduled for November 8, 2004.

On November 1, 2004 ILP moved for a continuance and to be dismissed from these proceedings. The hearing officer granted ILP's motions. See November 16, 2004 supplemental order explaining granting of ILP's motion to continue and to dismiss.

On or about November 8, 2004 the parents settled with YKSD.

At a November 11, 2004 telephonic pre-hearing conference the hearing was scheduled for January 18, 2005. The hearing was later postponed until March 2, 2005. At the beginning of the March 2nd hearing the district requested the opportunity to evaluate the student and the parents agreed. The hearing was continued until May 2, 2005. See March 3, 2005 order continuing hearing.

The hearing began on April 29th in order to take the testimony of Fairbanks special education director Eve Lambert, who was to be out of state the following week. The hearing continued from May 2nd through May 4th. The parties requested the opportunity to file post hearing briefs. It was necessary to prepare a transcript. Opening and reply briefs were filed by June 16th.

Under the foregoing circumstances there was good cause to extend the 45 day deadline to complete the hearing on May 4, 2005, and for a reasonable period thereafter for purposes of briefing and the hearing officer issuing this written decision.



EXHIBIT C
Page 3 of 18

9072748040    Pope and Katcher                           03:00:23 p.m.   06-30-2005        5/19

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[2]

1. The following witnesses testified at the hearing: Eve Lambert; Richard Patton, special education supervisor for YKSD; Suzanne K. Guinn, a private speech language pathologist engaged by the parents to serve the student; Emily Sharpton, a private respite care provider and aide engaged by the parents to serve the student; Joan Franz, a private occupational therapist engaged by the parents to serve the student; Todd Hume, father of the student; Erica Roest, a principal and assistant clinical director at the Connecticut Center for Child Development (CCCD) engaged by the parents to develop a plan to serve the student and to provide expert testimony; Hettie Hume, mother of the student; Janice Cleworth, former program coordinator for Fairbanks; Linda Benson, speech language pathologist for Fairbanks; Linda Robertson, coordinator for intensive and preschool services for Fairbanks; Jean James, preschool special education teacher for Fairbanks; Leslie Campbell, principal at Anne Wein Elementary School, Fairbanks; and, Dr. Teresa Bunsen, a professor of special education at University of Alaska Anchorage engaged by Fairbanks to help develop a plan to serve the student and to provide expert testimony.

2. The background and history of the student's condition is set forth in the February 2, 2005, Educational Placement Evaluation

---

[2] The burden of proof is on the district. 4 AAC 52.550(e)(9). All findings of fact are based upon the preponderance of the evidence. Id.

DECISION AND ORDER
E.H. v. FAIRBANKS, DEED CASE NO. HR 05-09b                    PAGE 4 OF 18

EXHIBIT C
Page 4 of 18

of the student prepared by Ms. Roest of CCCD. Parents' Exhibit 5. In summary, the student is easily distracted in new environments, has difficulty following directions in unstructured environments or from new people, exhibits inappropriate and perseverating behavior with objects and toys, has limited eye contact, is clumsy, has difficulty with transitions and over-stimulation, engages in some self stimulatory behaviors, and has difficulty with large groups of people, lights, unpredictable noises and waiting. Parents' Exhibit 5 pp. 3-4. The student is unaware of dangers and may walk into traffic or off ledges. Id. Testimony from several witnesses indicated that the student also has problems interacting appropriately with his peers.

3. What follows is a chronology of the parents' interactions with the school districts.

08/26/02   Mother contacted Fairbanks district to request information about services for the student, who was then age 2 years 7 months. Janice Cleworth, then program coordinator for Fairbanks, filled out a form used by the district for students coming into special education from the Infant Learning Program (ILP). District Exhibit 1 pp. 1-2; Tr. 540-41.

09/4/02    Cleworth met with mother, father and Linda Benson, speech language pathologist for Fairbanks. District Exhibit 1; Tr. 543-44. Cleworth is 90% certain she gave the parents a notice of procedural safeguards booklet. Tr. 544-45. The meeting with the parents was one of several Cleworth was having that day with new parents coming into the district from ILP. Id. Cleworth's standard practice is to give notice of procedural safeguards to new parents. Id. The father testified that he did not remember receiving any information about the student's special education rights before receiving such information from YKSD in the Fall of 2004. Tr. 256-57, 269-70, 444. The mother testified that she did not receive any notice of procedural safeguards at the September 4, 2002 meeting. Tr. 454. The mother is certain she did not receive any



|  |  |
|---|---|
|  | notice of procedural safeguards until she got them from YKSD on August 27, 2004. Tr. 471-72; Parents Exhibit 16 p. 66. |
| 12/20/02 | Jean James, a preschool special education teacher for Fairbanks, contacted the parents about scheduling a meeting to discuss the student's eligibility. Tr. 549-51; District Exhibit 4. |
| 01/15/03 | Parents met with Cleworth and Benson to discuss student's eligibility for special education services from Fairbanks. Tr. 547, 551-56; District Exhibit 2 pp. 5-6; District Exhibits 5 and 6. Cleworth prepared a handwritten Evaluation Summary and Eligibility Report (ESER). Tr. 551-56; District Exhibit 5. The parents took the ESER home to study along with the notice of procedural safeguards booklet that Cleworth had given them. Id. The parents prepared a typewritten addendum which they returned with the signed ESER. Id. Cleworth and Benson specifically recall giving the parents a copy of the notice of procedural safeguards booklet. Tr. 553-54 and 629. Cleworth gave the parents a prior written notice. District Exhibit 7. The prior written notice includes: "You have specific rights of procedural safeguards. A copy of those rights may be obtained from me or another school district representative. If you need an explanation of your rights or have any questions regarding this notice, please contact me." The father testified he did not know what this meant. Tr. 263. The student was attending Open Arms pre-school at this time. Parents Exhibit 17. |
| 02/13/03 | Mother called Cleworth and left a message that she wanted to visit Anne Wein Elementary School (Wein). Tr. 557; District Exhibit 8 p. 1. Cleworth arranged the visit to Wein. Id. |
| 02/17/03 | Father called Cleworth and left a message that he had visited Wein and was calling off an IEP meeting set for the next day, February 18th. Tr. 558; District Exhibit 8 p. 1. The father testified that he had visited Wein and found it to be unsatisfactory. Tr. 264-65. The father testified that it was not his intention to refuse special education services from Fairbanks. Tr. 267. |
| 02/20/03 | Cleworth called the parents and left a message that if they were not then interested in school they could talk again in May or August 2003. District Exhibit 8 p. 1; Tr. 558. |

DECISION AND ORDER
E.H. v. FAIRBANKS, DEED CASE NO. HR 05-09b                                    PAGE 6 OF 18


EXHIBIT C
Page 6 of 18

| | |
|---|---|
| 02-03/03 | Several phone calls with mother regarding possible programs for student. District Exhibit 8 pp. 2-5; Tr. 559-62. Mother visits Joy Elementary School. District Exhibit 8 p. 5. |
| 04/01/03 | Father called James and advised "he decided that he doesn't want [special education] services ... at this time." District Exhibit 4; Tr. 562, 689-92. The father denied telling this to James. Tr. 812. The father said he would have told James the parents did not want the services being offered by the district. Id. |
| 05/10/04 | Mother called Cleworth to discuss summer school, known as Extended School Year (ESY). District Exhibit 11; Tr. 564-66. This was five days before the end of the 2003-04 school year. District Exhibit 10; Tr. 564. Mother and Cleworth discussed possible ESY and possible services in Fall 2004. Id. Cleworth expected the parents to contact special education director Lambert. Tr. 565-66. The parents did not call Lambert. |
| 05/04 | Parents began contacting YKSD about providing special education services to the student. Tr. 52; Parents Exhibit 16 pp. 1-40. |
| 08/18/04 | Mother executed an authorization for Fairbanks district to release records to YKSD and "that F.N.S.B. school representative be invited to the mediation." Parents Exhibit 18. |
| 08/27/04 | YKSD and parents mediated. Parents' Exhibit 22 pp. 37-38. Linda Robertson from the Fairbanks district was present. Id. YKSD issued an invitation to various persons, including Robertson, to attend a September 9, 2004 meeting regarding the student. Parents Exhibit 22 p. 22. |
| 09/15/04 | YKSD and parents developed an IEP. District Exhibit 15. Robertson was present at the IEP meeting. Id. The YKSD IEP provided, among other things, that the student would be served at Open Arms preschool. Tr. 60. Mother signed consents for YKSD to evaluate and serve the student. District Exhibits 16 and 17. |
| 09/23/04 | Parents through counsel demanded due process against YKSD and Fairbanks. District Exhibit 12/Parents Exhibit 24. |
| 09/27/04 | YKSD and parents agreed to amendment of IEP. District Exhibit 19. |


EXHIBIT C
Page 7 of 18

10/13/04  Fairbanks's counsel made unconditional offer to parents' counsel to serve student at Wein. District Exhibit 14.

10/20/04  Mother went to the Fairbanks district offices and requested to enroll student at Wein. Tr. 24-25. Mother took student to Wein where Principal Campbell arranged to obtain a copy of the YKSD IEP. Tr. 696-98. Mother executed a records request for YKSD to send records to Fairbanks. District Exhibit 21. Fairbanks then enrolled student at Wein. Tr. 701. Fairbanks initially served student using the YKSD IEP until there was a chance to have an IEP meeting and to assess and evaluate the student. Tr. 26-27.

10/27/04  Fairbanks convened an IEP meeting to amend the YKSD IEP. District Exhibit 22. The amendment was an interim plan to serve the student so that the district could evaluate and assess the student who was new to its program. Tr. 687. The parents consented to the district further evaluating the student. District Exhibit 22 pp. 9-13.

11/03/04  The last day student attended Wein. District Exhibit 32 p. 4; Tr. 705. The student attended Wein a total of eight days. Parents did not provide Fairbanks with written notice of their intention to withdraw the student and place him with a private school. Tr. 707-08.

11/04/04  Parents sent district a list of objections and stated "[u]ntil [the student's] IEP is revised to meet his needs he cannot progress and we cannot proceed." Parents' Exhibit 16 p. 100. Parents sent student back to Open Arms preschool. Parents Exhibit 17.

11/08/04  Parents settle with YKSD.

4. **The district has waived its right to object to this due process hearing.** The school district argues that because the student was enrolled in a private school at the time the parents filed their due process hearing request they are therefore not entitled to a due process hearing but rather must pursue their complaint through the DEED complaint process. Even assuming the district is correct about the parents' right to a due process hearing as opposed to the DEED complaint process, the district long

DECISION AND ORDER
E.H. v. FAIRBANKS, DEED CASE NO. HR 05-09b                PAGE 8 OF 18


EXHIBIT C
Page 8 of 18

ago waived its right to assert this objection. The district never raised this issue before the June 2005 post hearing briefing even though this due process hearing has been actively, extensively and expensively litigated at least since the first pre-hearing conference on October 7, 2004. The district's November 1, 2005 pre-hearing brief does not mention the issue. The district was a party to these proceedings in November 2004 when ILP filed and prevailed with its motion to dismiss. The district appeared at the March 2, 2005 hearing and requested a continuance in order to evaluate the student. The district appeared and participated in the April 28th through May 4th hearing. Not once during any of these proceedings did the district object to the hearing process. The district never suggested that the matter should be handled as a DEED complaint. It was only in its June 7, 2005 opening post-hearing brief that the district for the first time indicated any objection to the hearing process. Under these circumstances the district has waived its right to object to this due process hearing.

5. The parents seek reimbursement for various education related expenses they incurred on behalf of the student. The principal issues are:

**A. Did the district give the parents the notice of procedural safeguards booklet?** The hearing officer finds that the district has met its burden of proving by a preponderance of the evidence that Cleworth gave the parents the notice of procedural safeguards booklet on September 4, 2002 and January 15, 2003. The

hearing officer accepts Cleworth's testimony that, consistent with her standard practice for meetings with new parents coming to the district from the ILP, she is 90% certain that she gave the parents the notice of procedural safeguards booklet on September 4, 2002. The hearing officer accepts Cleworth's and Benson's testimony that they have specific recollections of giving the parents the notice of procedural safeguards booklet at the January 15, 2003 meeting.

    **B. Did the parents tell the district on April 1, 2003 that they did not want special education services from the district?** The hearing officer finds that the district has met its burden of proving by a preponderance of the evidence that the father told Jean James on April 1, 2003 that the parents did not want special education services from the district. In the face of the conflicting testimony from James and the father, the hearing officer is most persuaded by the fact that the parents did absolutely nothing to pursue services from the district after April 1, 2003. When compared with the considerable amount of energy that the parents put into investigating services from Fairbanks between August 26, 2002 and April 1, 2003, along with parents' vigorous pursuit of services from YKSD during the summer and fall of 2004, the parents' absolute failure to do anything after April 1, 2003, compellingly establishes that the parents were not interested in services from Fairbanks at that time.

    **C. When did the student become a student of the district?** The hearing officer finds that district has met its burden of proving by a preponderance of the evidence that the

DECISION AND ORDER
E.H. v. FAIRBANKS, DEED CASE NO. HR 05-09b                    PAGE 10 OF 18

EXHIBIT C
Page 10 of 18

student did not become a student of the district until the parents enrolled him at Wein on October 20, 2004. The mother's May 10, 2004 inquiry about ESY neither served to enroll the student in the district nor did it serve to compel the district to serve the student. The hearing officer finds that the parents' failure to call Lambert after talking with Cleworth on May 10, 2004 is consistent with the parents not intending to enroll the student in the Fairbanks district. The hearing officer finds that the parents' subsequent conduct during the summer of 2004 in pursuing services with YKSD, including confronting and ultimately successfully mediating with YKSD about, among other things, YKSD's claim that the student was not eligible for YKSD's program, strongly suggests not only that the parents did not want services from the Fairbanks district, but also that the parents were well aware of and quite sophisticated at asserting their rights. See, e.g., Parents' Exhibit 16 pp. 16 ("Could you direct me to the verbiage that prohibits [the student's] enrollment?") and 20 ("I thought my son .... was eligible under the following Alaska Administrative Codes. I still cannot find the language that spells out the reason he cannot attend [YKSD]. Please provide the location of the language.")

As a consequence, because the student was not a student of the district until October 20, 2004, the parents are not entitled to reimbursement from the district for any expenses incurred before that date.

DECISION AND ORDER
E.H. v. FAIRBANKS, DEED CASE NO. HR 05-09b          PAGE 11 OF 18



EXHIBIT C
Page 11 of 18

**D. Did the parents unilaterally and without notice withdraw the student from the district on November 4, 2004?** The hearing officer finds that district has met its burden of proving by a preponderance of the evidence that the parents unilaterally and without notice withdrew the student from the district on November 4, 2004. The parents enrolled the student with Fairbanks on October 20th. The district attempted to serve the student by placing him with the parents' consent at Wein where they could observe and evaluate him for purposes of developing an appropriate program. The parties convened an IEP meeting on October 27th and the parents consented to this evaluation process. The parents then unilaterally withdrew the student without notice on November 4th.

Regardless of the alleged legitimacy of the parents' concerns about the program at Wein, the parents did not have the right to unilaterally withdraw the student, place him in a private school setting, incur private specialist services, and then demand reimbursement for the district.

The overarching principle to be applied to special education cases is that the student is entitled to a Free Appropriate Public Education (FAPE). FAPE is defined as special education and related services, provided at public expense, meeting state standards, including an appropriate education, and in conformity with an IEP. 20 U.S.C. 1401(8); 34 CFR 300.13; 4 AAC 52.790(a)(7) and (8). The education and related services must be "tailored to the unique needs" of the student and must be "reasonably calculated to enable the child to receive educational benefits." <u>Board of Education of</u>

DECISION AND ORDER
<u>E.H. v. FAIRBANKS</u>, DEED CASE NO. HR 05-09b                PAGE 12 OF 18



EXHIBIT C
Page 12 of 18

Hendrick Hudson Central School District v. Rowley, 458 U.S. 176, 181, 206-07, 102 S.Ct. 3034, 3038, 3051 (1982). The districts' evaluation and assessment plan of services at Wein, which the parents consented to on October 27th, was reasonably calculated for purposes of developing an ultimate IEP that would provide educational benefit to the student. The parents' unilateral withdrawal of the student on November 4th sabotaged that plan. The hearing officer agrees with the district's arguments number 2 and 3 at pages 7 through 10 of its June 8, 2005 opening post hearing brief. The parents may not now be heard to demand reimbursement for the expenses they incurred as a result of their having unilaterally and without notice prevented the district from performing its duties. The hearing officer is particularly influenced by the fact that the parents had counsel and were actively litigating and negotiating with the district and YKSD at the time of the unilateral withdrawal. As a result the hearing officer finds that the parents are not entitled to reimbursement from the district for the expenses incurred by the parents after the November 4, 2004 withdrawal.

6. **The district is not estopped from claiming that it may provide a program which includes non-ABA elements.** There still remains the issue of what of program the district must provide to the student in the future. The parents demand that the district provide the student with a program that exclusively uses the



principles and methods of Applied Behavior Analysis (ABA).[3] The parents argue that the school district has taken positions during these proceedings which should estopp it from refusing to implement an exclusively ABA program. For the reasons detailed below, the hearing officer finds that district is not estopped from arguing that it may provide a program which includes non-ABA elements.

On the last day of the hearing the district called to testify Dr. Teresa Bunsen, a professor of special education at University of Alaska Anchorage. Very early into Dr. Bunsen's testimony the district asked her about using methods other than ABA to teach autistic children. Tr. 736. The parents immediately objected, stating that they understood from the testimony of special education director Lambert that the district would provide an exclusively ABA program. Tr. 736-38. The district responded that while it had agreed to train staff in ABA it had never agreed to

---

[3] A federal district court has provided the following explanation of ABA:

> Two of the most widely accepted methodologies for the treatment of autism are the Lovaas method and the Treatment and Education of Autistic and related Communications Handicapped Children ("TEACCH").
>
> .....
>
> The Lovaas method relies heavily on Applied Behavioral Analysis ("ABA") and Discrete Trial Training ("DTT"). ABA "consists of breaking down activities into discrete individual tasks and rewarding the child's accomplishment. The child eventually learns to integrate the information and associate instruction with a given activity." Mr. X v. New York St. Educ. Dept., 995 F.Supp. 546, 548 (S.D.N.Y. 1997).

Pitchford v. Salem-Keizer School District, 155 F.Supp.2d 1213, 1216-17 (D.Oregon 2001).

DECISION AND ORDER
E.H. v. FAIRBANKS, DEED CASE NO. HR 05-09b                PAGE 14 OF 18

EXHIBIT C
Page 14 of 18

provide an exclusively ABA program. Tr. 746.

A party may be judicially estopped from taking inconsistent positions in the same litigation. <u>Yanez v. U.S.</u>, 989 F.2d 323, 325-26 (9th Cir. 1993). The question then becomes whether the district has taken inconsistent positions regarding an exclusively ABA program for the student. Upon reviewing the record the hearing officer finds that the district did not take inconsistent positions regarding an exclusively ABA program. Neither special education director Lambert nor the district's counsel made representations that the district would provide an exclusively ABA program. Indeed, on the very first day of the hearing Ms. Lambert testified directly to the contrary:

> Q   Did there ever come a time when you indicated to any parents in the district, Ms. Lambert, that the school district does not, quote, "do ABA"?
> A   We were asked specifically if we were-had an ABA-exclusive model, and no, we do not.
> Q   Okay. And when you say an ABA-exclusive model, what do you mean?
> A   That is not the only methodology that our teachers use.

Tr. 20.

Linda Robertson, coordinator for intensive and preschool services for the district, testified:

> Q   Does the Fairbanks School District subscribe to any one particular methodology or approach for teaching children who experience autism?
> A   We really believe that you need to take the best of each methodology that is considered state of the art, create a unique individualized program for the student, depending on what their needs are.

Tr. 649.

**DECISION AND ORDER**
<u>E.H. v. FAIRBANKS</u>, DEED CASE NO. **HR 05-09b**                PAGE 15 OF 18

EXHIBIT **C**
Page **15** of **18**

It appears that the parents' expert Ms. Roest understood that the district was not committing to an exclusively ABA program. Ms. Roest testified:

> Q   What--And have you become aware that the district on Friday [April 29, 2005] has indicated it would provide Eric an ABA-trained staff and staff trained in ABA?
> A   Yes
> Q   Okay. Now, how do-how does-how does this work together? How does the provision of an ABA program work for Eric in a regular ed classroom?
> A   *****
>     So its not really enough to say that you have a trained aide or that staff have been trained in Applied Behavior Analysis, per se, as it is the application of the instructional-the individualized specialized instructional methods that Eric needs ...

Tr. 356-58.

Ms. Roest further testified:

> And I think without that crucial piece, what you're ending up with is not an ABA program. The crux or the actual significance of ABA programming lies in its individualization to each student, and the continues analysis of data on an ongoing basis.
>     So unless you have that supervision component with the individualization, you don't really have an ABA program.

Tr. 393.

The district's counsel made it clear that the district was not committing to an exclusively ABA program.

> We have committed to ABA training for the paraprofessional and for the staff. But the testimony is not going to be that is the exclusive methodology that is going to be used.

Tr. 416.

**DECISION AND ORDER**
**E.H. v. FAIRBANKS**, DEED CASE NO. **HR 05-09b**                         PAGE 16 OF 18



EXHIBIT C
Page 16 of 18

In response to the parents' objection to the relevance of evidence of non-ABA methodologies the hearing officer stated:

> But you know, the district is going to put on evidence that they think part of their program should include [other methods such as] PEC or TEACH, then they're entitled to cross examine this witness on the merits.

Tr. 418.

On this record it cannot be concluded that the district took inconsistent positions regarding ABA. Therefore the district is not estopped from arguing that it may provide a program that includes other methods in addition to ABA. This determination means that if the parties have not resolved their differences regarding the particulars of the student's future program then it will be necessary to reopen the record in order to hear additional testimony at least from Ms. Roest and Dr. Bunsen. At the end of the hearing the hearing officer directed the parties to return to the IEP meeting in order to develop a program. The hearing officer then stated:

> And if, what I hope is the unlikely event, that there is a continuing controversy after this IEP meeting, then we'll hear from Dr. Bunsen on whatever ABA-plus is, as well as Ms. Roest or anybody else the parties think I should hear about or from, about that additional component that's beyond ABA.

Tr. 792.

The hearing officer will contact the parties to arrange a conference to discuss the status of the IEP and whether it is necessary to schedule additional testimony from by Dr. Bunsen, Ms. Roest and others.

**DECISION AND ORDER**
<u>E.H. v. FAIRBANKS</u>, DEED CASE NO. **HR 05-09b**                    PAGE 17 OF 18

EXHIBIT  C
Page 17 of 18

### RIGHT TO APPEAL

Under AS 14.30.193(f) the parents and the school district have the right to appeal this decision directly to the state or federal courts. The parents and the district have until thirty days after the date of this decision and order to exercise their rights to appeal. However, if it is necessary to reopen the record in order to hear additional testimony regarding the particulars of the student's future program then the time to appeal is extended until after the record is completely closed.

DATED this 30 day of June, 2005, at Anchorage, Alaska.

By _____
Jonathon A. Katcher
Hearing Officer


Certificate of Service

I hereby certify that on the 30 day of June, 2005, I mailed/FAX'd the foregoing to:

Sharon Schumacher
Alaska Dept. of Ed.
& Early Development
810 W. 10th Street, Suite 200
Juneau, AK 99801-1894
FAX 465-2806

Sonja Kerr
Disability Law Center
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
FAX 565-1000

Bradley D. Owens
Jermain, Dunnagan & Owens
3000 A Street, Suite 300
Anchorage, AK 99503
FAX 563-7022

_____
Jonathon A. Katcher

**DECISION AND ORDER**
*E.H. v. FAIRBANKS*, DEED CASE NO. HR 05-09b                          PAGE 18 OF 18

EXHIBIT C
Page 18 of 18